U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 JUL 31 PM 3:57

CLERK
BY ____PC____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DOREEN FORAUER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE VERMONT COUNTRY STORE, INC., )<br>)<br>Defendant. ) | Case No. 5:12-cv-276 |

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION
AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION
TO NOTIFY CLASS AND GRANTING IN PART AND DENYING IN PART
DEFENDANT'S CROSS-MOTION FOR RIGHT TO OBJECT TO
PLAINTIFF'S PROPOSED NOTIFICATION TO CLASS**
(Doc. 7, 10)

Pending before the court are two related motions: Plaintiff Doreen Forauer's motion for conditional certification of a collective action and to notify the potential class under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA") (Doc. 7), and Defendant The Vermont Country Store, Inc.'s ("VCS") cross-motion for the right to object to the proposed notification to class (Doc. 10). The court heard oral argument on the motions on June 3, 2013.

Ms. Forauer alleges that she worked for VCS for eight years, as both a telemarketing sales representative and as a customer service representative. She further alleges that VCS did not compensate her and other similarly-situated telemarketing sales representatives and customer service representatives for all hours worked because VCS allegedly required these employees to perform certain duties before and after their shifts for which the employees were not paid. Her complaint sets forth a violation of 29 U.S.C. § 206, which requires employers to pay all employees at least the minimum wage for all hours worked.

Ms. Forauer now seeks conditional certification of a collective action, pursuant to 29 U.S.C. § 216(b), for "a class of all current and former Telemarketing Sales Representatives and Customer Service Representatives employed by The Vermont Country Store within three years prior to the date of [this] order, who worked for [The Vermont Country Store] but were not paid minimum wages for a portion of the hours worked." (Doc. 7-1 at 1.) She further requests that the court order VCS to disclose the names of and identifying information for the potential class members; that the court authorize notice of the class to potential class members; and that the court order VCS to post notice at its worksites. VCS opposes the motion for conditional certification, arguing that Ms. Forauer has not met her burden of showing that she is similarly situated to other current or former employees or that VCS had in place a practice or policy common to all telemarketing sales representatives and customer service representatives that violates the FLSA.

VCS cross-moves with objections to the content of Ms. Forauer's proposed class notice, including the time period for potential class members to opt-in to the proposed class; the deadline for it to comply with any disclosure order; and the extent of employee information it must provide to Ms. Forauer should the court order disclosure of potential class members. VCS also requests that, if the court does authorize notice, the court set a deadline for Ms. Forauer to send notice to potential class members. Ms. Forauer does not object to such a deadline; however, she opposes VCS's proposed opt-in time period, as well as the majority of its other objections to the proposed class notice.

Ms. Forauer is represented by Christopher J. Larson, Esq. and Erin H. Gallivan, Esq. VCS is represented by Andrew H. Maass, Esq.

I.  **Factual Background.**

The following facts are derived from the complaint and the affidavits of Ms. Forauer and Maureen Dunham, which are treated as true and accurate for the purposes of the pending motions.

VCS employed Ms. Forauer from 2004 to 2012 as a telemarketing sales representative and as a customer service representative at its locations in Manchester,

Vermont, and North Clarendon, Vermont, although she worked mostly at the North Clarendon call center. VCS employed Ms. Dunham as a telemarketing sales representative at its North Clarendon, Vermont call center for at least five years until her termination in the spring of 2012. Ms. Forauer alleges that the telemarketing sales representatives and customer service representatives perform substantially similar tasks and that both sets of employees use the same equipment at VCS's various locations.

Ms. Forauer and Ms. Dunham allege that VCS required each to perform unpaid work before their shifts, which included turning on, booting up, and logging into their computers and various software programs, including a timekeeping software; reviewing emails and messages prior to the start of their shifts; and starting up VCS's website and their phones. Ms. Forauer and Ms. Dunham further allege that VCS required each to perform unpaid work during their breaks and at the end of their shifts, including closing down the phone, website, software, and computer; documenting daily activities; and reviewing the work schedule and requesting changes. Ms. Forauer claims she spent between twenty to thirty minutes per shift completing work for which she was not compensated. Ms. Dunham claims she spent an average of fifteen minutes before her shifts, five minutes during her breaks, and five to ten minutes after her shifts completing this work. In addition, Ms. Forauer asserts that VCS did not have a process for employees to recover wages for time spent completing this additional work.

Ms. Forauer and Ms. Dunham assert that VCS required its telemarketing sales representatives and customer service representatives to perform the same tasks without compensation that Ms. Forauer and Ms. Dunham were required to perform and that VCS knew these employees were not being compensated for the additional time worked. Ms. Forauer states that VCS instructed its employees "to arrive before their scheduled shifts in order to perform preliminary activities in order to be ready to take calls the moment their scheduled shifts began." (Doc. 1 at 4, ¶ 16.) Ms. Forauer identifies one supervisor whom she claims told Ms. Forauer that she needed to arrive at work earlier. She also identifies two employees who she claims told her they were "frustrated" with VCS's

alleged policy and thought it was "unfair" and not "right" that employees were not being compensated for the additional tasks. (Doc. 7-1 at 15-16.)

Ms. Dunham alleges that she was trained "on opening and closing procedures" and that she was instructed "to clock in exactly at the start of the shift and out exactly at the end of the shift." (Doc. 18 at 2.) She notes that she could see and hear other employees arriving to and leaving from their shifts and that she spoke with other employees near her station before and after their shifts, and she notes that she could also see the employee at the station behind her station completing the same tasks that she completed. As a result, Ms. Dunham alleges that all telemarketing sales representatives and customer service representatives "went through the same processes before and after shifts" because VCS "required" the employees complete "the same pre-shift and post-shift activities" off the clock. *Id.* at 2, 6.

If employees were not ready to take calls at the minute their shifts began or at the minute their breaks ended, or if employees logged out before their shifts ended, VCS allegedly reprimanded employees. Both Ms. Forauer and Ms. Dunham assert they were personally reprimanded on this basis. In addition, VCS allegedly had "policies in place" whereby an employee's performance scores were adversely affected if an employee was not ready to take calls every minute of the scheduled shift. (Doc. 1 at 4, ¶ 16.)

Ms. Forauer seeks certification of a class comprised of what she characterizes as similarly-situated individuals "who were, or are, employed by [VCS] in customer service, technical support, and similar positions in its call center" and that these individuals are "similar" because "their duties consisted primarily of providing customer service by telephone or online chat or email while working in [VCS's] call center(s)." (Doc. 1 at 2-3, ¶¶ 10-11.) She alleges VCS also "did not pay them for some of the time worked that occurred before and after the schedule shift," *id.*, and that they would be "readily identifiable" through VCS's records. *Id.* at 4, ¶¶ 18-20.

II.  **Conclusions of Law and Analysis.**

   A.  **Conditional Class Certification under the FLSA, 29 U.S.C. § 216(b).**

   Section 216 of the FLSA provides: "An action to recover the liability prescribed in [this section][1] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Section 216(b) "expressly authorizes employees to bring collective . . . actions" and thereby evinces a congressional policy of allowing FLSA plaintiffs "the opportunity to proceed collectively."[2] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

   In *Hoffmann-La Roche*, the Supreme Court addressed whether "district courts may play any role in prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has

---

[1] The FLSA imposes liability for failure to pay minimum wage, 29 U.S.C. § 206, for failure to compensate for overtime, 29 U.S.C. § 207, and for discharge or other retaliation against an employee who availed himself or herself to the protections afforded under 29 U.S.C. § 215(a)(3).

[2] A § 216(b) collective action differs from a class action pursuant to Fed. R. Civ. P. 23 in several important respects. "[I]n order to participate in a [FLSA] collective action, an employee must 'opt-in,' meaning the employee must consent in writing to join the suit and that consent must be filed with the court." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007). "Unlike class action suits brought pursuant to Fed. R. Civ. P. 23, only potential plaintiffs who 'opt in' may be bound by or benefit from the judgment in a[] FLSA collective action. In this way, Section 216(b) creates a device less like a Rule 23 class action and more like permissive joinder, allowing all employees similarly situated to join their cases in one action." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 196 (S.D.N.Y. 2006) (internal citations omitted). The "requirements of Fed. R. Civ. P. 23 do not apply to the approval of a [FLSA] collective action and thus 'no showing of numerosity, typicality, commonality and representativeness need be made.'" *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (quoting *Foster v. The Food Emporium*, 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000)); *see also Lynch*, 491 F. Supp. 2d at 369 (same). "As a result, the 'similarly situated' standard for certifying a 216(b) collective action is considerably more liberal than class certification under Rule 23." *Lynch*, 491 F. Supp. 2d at 369; *see also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367-68 (S.D.N.Y. 2007).

been brought."³ *Id.* at 169. It held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs," *id.*, and by allowing discovery of the names and addresses of potential class members. *Id.* at 169, 170; *see also Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) (interpreting § 216 "as permitting, rather than prohibiting, notice").

Once a § 216(b) action is filed, a district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way," *Hoffmann-La Roche*, 493 U.S. at 170-71, and it is "within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Id.* at 171. A district court's discretion, however, is not "unbridled," and it "must be scrupulous to respect judicial neutrality . . . to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174 (cautioning further that "intervention in the notice process for case management purposes [must be] distinguishable in form and function from the solicitation of claims").

In light of *Hoffmann-La Roche* and *Braunstein*, "[i]t is well settled that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA." *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 305-06 (S.D.N.Y. 1998) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007) ("[T]o better serve the FLSA's 'broad remedial [goal],' courts may order notice to other potential similarly situated employees to inform them of the opportunity to opt-in the case.") (quoting *Hoffmann-La Roche*, 493

---

³ Prior to *Hoffmann-La Roche*, in *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335 (2d Cir. 1978), the Second Circuit addressed "whether a district court has the power to order that notice be given to other potential members of the plaintiff class under the 'opt-in' provision of the Fair Labor Standards Act dealing with actions for nonpayment of statutorily required minimum wages and overtime compensation." *Id.* at 335-36. The Second Circuit concluded "that it makes more sense, in light of the 'opt-in' provision [of the FLSA, § 216(b),] to read the statute as permitting, rather than prohibiting, notice in an appropriate case," a holding the Second Circuit concluded "comports with the broad remedial purpose of [the FLSA], which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits." *Id.* at 336.

6

U.S. at 173); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("A district court may permit an opt-in notice to be sent to potential plaintiffs.").

In order to determine "whether a matter should proceed as a collective action," district courts in the Second Circuit have "generally follow[ed] a two-step process." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006); *see also Lynch*, 491 F. Supp. 2d at 367-68 ("Federal district courts in New York have adopted a two-step approach to determine whether certification is proper."). The Second Circuit has stated that this two-step approach is "sensible" but has not expressly endorsed or rejected it:

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. . . . At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) (internal citations omitted) ("[T]he district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible."); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008) ("sanction[ing] a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase").

Conditional certification is the first step "in which the court determines, based on [the] plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery." *Lynch*, 491 F. Supp. 2d at 368. "[C]ourts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Realite*, 7 F. Supp. 2d at 306 (quoting *Hoffmann*, 982 F. Supp. at 261); *see, e.g., Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340,

345 (E.D.N.Y. 2012) (same). "[T]he named plaintiff need only demonstrate a 'factual nexus' between his or her situation and the situation of other current and former employees." *Young*, 229 F.R.D. at 54 (quoting *Hoffmann*, 982 F. Supp. at 261, 262) (collecting cases). The focus of this first step "is not on whether there has been an actual violation of law[,] but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Young*, 229 F.R.D. at 54.

"When determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purposes of the FLSA."[4] *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (citing *Braunstein*, 600 F.2d at 336). The named plaintiff's burden "is very low" at this step, and "the initial 'conditional certification' determination is merely a preliminary finding." *Lynch*, 491 F. Supp. 2d at 368 (citing *Lee*, 236 F.R.D. at 197); *see also Iglesias-Mendoza*, 239 F.R.D. at 367 (describing standard as "lenient"). Additionally, the district court should "not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" when considering whether the named plaintiff and potential opt-in members are similarly situated, and "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification." *Lynch*, 491 F. Supp. 2d at 368, 369; *see also Iglesias-Mendoza*, 239 F.R.D. at 368.

---

[4] The Supreme Court and the Second Circuit have recognized that the FLSA's "principal congressional purpose . . . was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alterations in original) (quoting 29 U.S.C. § 202(a)); *Freeman v. Nat'l Broad. Co.*, 80 F.3d 78, 86 (2d Cir. 1996) ("[The] FLSA was intended . . . to prohibit substandard labor conditions."). The "FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employer covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of overwork as well underpay.'" *Barrentine*, 450 U.S. at 739 (quoting 81 Cong. Rec. 4983 (1937)); *see also Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 283 (2d Cir. 2008) (same). The FLSA "sets a national 'floor' in terms of working conditions, in order to protect workers from the substandard wages and excessive hours that might otherwise result from the free market." *Rogers v. City of Troy*, 148 F.3d 52, 57 (2d Cir. 1998).

8

If the named plaintiff "meets the minimal burden of showing that the similarly situated requirement is met, a court certifies the class as a collective action," and "[p]otential class members are then notified and provided with the opportunity to opt in to the action." *Lee*, 236 F.R.D. at 197; *see also Lynch*, 491 F. Supp. 2d at 368 ("Once the court determines that potential opt-in plaintiffs may be 'similarly situated' for the purposes of authorizing notice, the court 'conditionally certifies' the collective action, and the plaintiff sends court-approved notice to potential members.") (quoting *Iglesias-Mendoza*, 239 F.R.D. at 367). The "potential plaintiffs may then elect to opt-in pursuant to [§] 216(b) by filing Consent Forms with the court," and, "[o]nce notice is accomplished, the action proceeds as a collective action throughout the discovery process." *Lynch*, 491 F. Supp. 2d at 368.

The first step is only conditional, and after discovery, at the second step, the "court examines the record and again makes a factual finding regarding the similarly situated requirement." *Lee*, 236 F.R.D. at 197. "[I]f the claimants are similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims." *Id.*; *see also Iglesias-Mendoza*, 239 F.R.D. at 367.

VCS opposes Ms. Forauer's motion for conditional certification, arguing that Ms. Forauer has not met her burden of showing that she is similarly situated to any current or former employees at VCS. VCS further argues that Ms. Forauer cannot establish that it had a common plan or policy violative of the law because it contends: (1) Ms. Forauer could have logged into the timekeeping software as the first step, rather than the last step; (2) VCS informed employees to refrain from working at home and afforded employees time at work to perform required tasks separate from their duties of handling customer calls; (3) Ms. Forauer references the practices of only one supervisor, when there are likely many supervisors; and (4) VCS provides employees a "Time Card Change Form," which allows employees to override the timekeeping software to correct their time worked and which Ms. Forauer had used in the past.

While the contentions raised by VCS would undermine Ms. Forauer's claim that it violated § 206 of the FLSA, at this stage in the proceedings the court's focus "is not on whether there has been an actual violation of law," *Young*, 229 F.R.D. at 54, because the court does not "decide substantive issues going to the ultimate merits." *Lynch*, 491 F. Supp. 2d at 368; *see also Young*, 229 F.R.D. at 55 ("[A] court adjudicating a motion to authorize a collective action need not evaluate the merits of plaintiffs' claims in order to determine whether a similarly situated group exists. . . . Thus, [plaintiff's] entitlement to relief under the FLSA . . . does not figure in the inquiry.") (internal citations and quotation marks omitted). The court also does not "resolve factual disputes" or "make credibility determinations" at the conditional certification stage. *Lynch*, 491 F. Supp. 2d at 368. As a result, "[f]or the moment, the factual variations [VCS] rel[ies] on do not undercut [Ms. Forauer's] allegations of common wage and overtime practices that violate the FLSA." *Iglesias-Mendoza*, 239 F.R.D. at 368; *see also Lynch*, 491 F. Supp. 2d at 369 (noting that "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification").

Instead, Ms. Forauer must make the "modest factual showing" required for conditional certification of a FLSA action. Here, she has done so by providing supporting affidavits and "supporting allegations [that are] specific, not conclusory" regarding why she claims the FLSA has been violated and why she claims that the proposed class consists of similarly situated employees. *Cf. Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 509, 512-13 (S.D.N.Y. 2010) (denying conditional certification when plaintiffs alleged they were not reimbursed for uniform expenses in violation of the FLSA but "failed to present their allegations with sufficient specificity" as to "detail what their 'uniforms' are comprised of" and "how much the purchase and maintenance of their uniforms cost them or how these costs relate to their weekly wage"); *Morales v. Plantworks, Inc.*, 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006) (denying conditional certification when plaintiff's affidavit and exhibits included the "conclusory allegation" that twenty other employees were forced to work overtime but there were "no allegations of a company policy or plan to deny . . . overtime").

Ms. Forauer, who worked as both a telemarketing sales representative and a customer service representative and who worked at both the North Clarendon and Manchester locations, has averred that she was required to follow the alleged policy in both her roles as a telemarketing sales representative and a customer service representative and when she worked at either location. *See Realite*, 7 F. Supp. 2d at 307 (concluding plaintiffs' burden met when plaintiffs showed that compensation "practices . . . were not limited to a single . . . restaurant or a single employee position" and that "these compensation practices remained the same even when [employees] changed job positions within a given restaurant or transferred to one of the [defendant's other restaurants]").

She and Ms. Dunham also allege that VCS specifically instructed all of its employees on this policy, which establishes, at least at this stage, that a company-wide policy applied uniformly to all telemarketing sales representatives and customer service representatives and resulted in those employees not being compensated for their time worked. *See Hoffmann*, 982 F. Supp. at 261-62 (granting conditional certification because plaintiffs established that group of employees plaintiffs sought to certify as a class "were subject to reductions in their compensation as result of a uniform company-wide policy"). First-hand knowledge of how the employer's policies specifically impact hours worked, and therefore employee compensation, is sufficient to show a common plan or policy that violates the FLSA. *See Guzelgurgenli*, 883 F. Supp. 2d at 346-47 (denying conditional certification of class of store managers because none of named plaintiffs alleged they were or had been store managers or alleged they had knowledge of compensation for store managers, but granting conditional certification of class of in-store hourly employees, assistant store managers, and delivery drivers because named plaintiffs established knowledge of compensation as to these employees).

Because Ms. Forauer has identified a specific policy that allegedly applies to any employee working in the same positions that she worked, she has shown the "'factual nexus' between . . . her situation and the situation of other current and former employees" employed in the same positions; she has shown therefore how she and the "proposed

11

plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Young*, 229 F.R.D. at 54 (quoting *Hoffmann*, 982 F. Supp. at 261, 262); *see also Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 801 (S.D.N.Y. 2012) (explaining plaintiff must show she "is similarly situated *to the employees [s]he proposes to include in the collective action* with respect to" the plaintiff's specific FLSA claim).

The court therefore GRANTS the motion for conditional certification of a collective action under the FLSA, and the court conditionally certifies a class of all current and former telemarketing sales representatives and customer service representatives employed by The Vermont Country Store within three years prior to the date of this Opinion and Order, dated July 31, 2013.

**B. Timing and Content of Class Notice and Consent Form.**

Ms. Forauer argues that it is appropriate at this juncture for the court to authorize notice to be sent to potential class members. VCS objects, arguing that it would be more appropriate to continue discovery before authorizing notice.

In determining whether to send notice at this time, the court must "be mindful of the remedial purposes of the FLSA," *Iglesias-Mendoza*, 239 F.R.D. at 367, and often "courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management." *Hoffmann*, 982 F. Supp. at 262; *see also Young*, 229 F.R.D. at 55 ("[T]he sending of notice to similarly situated individuals 'comports with the broad remedial purpose of the Act, . . . as well as with the interest of the courts in avoiding multiplicity of suits.'") (alteration in original) (quoting *Braunstein*, 600 F.2d at 336). Further, "even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out *not* to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case." *Krueger v. N.Y. Tel. Co.*, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993). "Courts have recognized that it is best to authorize a collective action and then 'wait[ ] to see what the facts bear out.'" *Young*, 229 F.R.D. at 55 (alteration in original) (quoting *Realite*, 7 F. Supp. 2d at 308).

In light of these considerations, the court GRANTS Ms. Forauer's motion to notify the potential class members of the collective action.

Both parties submitted proposals for the notice and consent form. The notice submitted by Ms. Forauer tracks notices that have been previously authorized. *See, e.g., Lynch*, 491 F. Supp. 2d at 372-74. The court authorizes a form of notice substantially similar to that submitted by Ms. Forauer, subject to the following revisions. The approved notice and consent form are attached to this Opinion and Order as Addendum 1.

With regard to Ms. Forauer's proposal, she requests under the section titled "Further Information" one sentence that reads, "There is information about this suit at the attorneys' website, www.yourvtlawyer.com." Because the content of this website has not been provided to the court to review, the court will not authorize inclusion of this sentence in the class notice at this time.

With regard to VCS's proposal, the court GRANTS those changes proposed by VCS to which Ms. Forauer does not object. The court also agrees with VCS that three additional proposed modifications to the notice of a FLSA class are warranted. First, the court agrees that it is appropriate to omit the phrase "who performed unpaid work before, during, or after shifts" (Doc. 7-2 at 1, 2) as it assumes that employees have performed work for which they should have been paid, which is an unresolved factual issue in this case. Second, the court agrees that the class notice should inform potential class members of the consequences of failing to timely return the "Consent to Become a Party Plaintiff" form. Third, the court agrees with VCS that it is appropriate to include the name and contact information for its attorney, which will alert potential class members to any conflicts before those individuals opt-in.

The court DENIES VCS's two remaining proposed modifications to the class notice that include, first, an additional paragraph proposed to be included under the section titled "Effect of Joining or Not Joining This Lawsuit" and, second, a different articulation of the section titled "No Retaliation Permitted." The court agrees with Ms. Forauer that the proposed additional paragraph could discourage potential class members from joining the collective FLSA action. Because potential class members could obtain

this information by consulting with Ms. Forauer's attorneys, the potential to discourage individuals from opting in to the class outweighs any value from including the proposed information in the notice. Further, the court agrees that Ms. Forauer's proposed paragraph on "No Retaliation Permitted" provides a more straightforward and understandable articulation of this concept than the paragraph VCS proposed.

C.  **Disclosure of Potential Class Members and Identifying Information.**

Ms. Forauer requests the court to order disclosure of the names, addresses, telephone numbers, dates of employment, locations of employment, dates of birth, and last four digits of social security numbers for potential class members. VCS does not object to the disclosure of the names, addresses, telephone numbers, and dates of employment for potential class members. It objects to disclosure of the dates of birth and social security numbers.

At least one court has ordered the disclosure of "name, address, telephone number, dates of employment . . . , location of employment, date of birth, and last four digits of their Social Security Number." *Lynch*, 491 F. Supp. 2d at 371-72. However, at this juncture, Ms. Forauer has not shown how disclosure of dates of birth and social security numbers will aid in identifying and sending notice to potential class members. The court therefore DENIES WITHOUT PREJUDICE Ms. Forauer's request for this information, and the court ORDERS VCS to disclose to Ms. Forauer the names, addresses, telephone numbers, and the dates of employment of potential class members.

D.  **Deadline to Comply with Disclosure Order.**

Ms. Forauer requests the court order VCS to respond to the disclosure order contained herein within fifteen days. VCS requests that the court extend this deadline to thirty days. Courts ordering disclosure have required a defendant to comply within five days, *see Lynch*, 491 F. Supp. 2d at 371, twenty-one days, *see Young*, 229 F.R.D. at 57, and thirty days. *See Iglesias-Mendoza*, 239 F.R.D. at 370; *Lee*, 236 F.R.D. at 202. Here, VCS reasonably maintains that a fifteen-day deadline is unduly burdensome and that a thirty-day deadline is more appropriate. The court agrees and ORDERS VCS to disclose

14

to Ms. Forauer the names and information of potential class members within thirty (30) days from the date of this Opinion and Order.

### E. Deadline for Ms. Forauer to Send Notice to Potential Class Members.

While not addressed initially by Ms. Forauer in her motion, VCS requests that the court order "a date certain for [Ms. Forauer] to notify potential opt-in candidates of this lawsuit." (Doc. 9 at 14.) VCS proposes twenty days after the court approves notice, which Ms. Forauer responds that the deadline will prove unworkable if VCS has thirty days within which to comply with the court's disclosure order contained herein. Ms. Forauer therefore requests in her reply "a date at least days twenty thereafter" the date the court orders disclosure "by which [she] is required to mail the approved notice." (Doc. 11 at 2.) Her proposed schedule is reasonable under the circumstances, and the court hereby adopts it. The court thus ORDERS Ms. Forauer to send notice to potential class members within twenty (20) days from the date that VCS complies with the disclosure order contained herein.

### F. Period for Potential Class Members to Opt-In.

Ms. Forauer requests a ninety-day period for potential class members to opt-in. VCS contends that this period should be shortened to sixty days.

"Generally, 'courts have held that a sixty (60)-day period is sufficient for the return of Consent Forms,' particularly where . . . the 'proposed class is relatively localized and not extremely large.'" *Guzelgurgenli*, 883 F. Supp. 2d at 357 (quoting *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 85 (E.D.N.Y. 2008)). "While some courts have granted up to 90 day opt-in periods, they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011); *see also Fang v. Zhuang*, 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (providing for 90-day period "in light of the frequent, long-term international travel of many of the prospective plaintiffs"); *but see Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007) (authorizing ninety-day opt-in period without consideration of any special circumstances).

15

Here, the potential class likely is not "extremely large" and likely is "relatively localized." *Guzelgurgenli*, 883 F. Supp. 2d at 357 (internal quotation marks omitted). Moreover, Ms. Forauer identifies no special circumstances, beyond considerations general to any FLSA collective action, warranting a ninety-day opt-in period for this case. The court thus ORDERS that potential class members must opt-in within sixty (60) days from the date Ms. Forauer sends to the potential class members the "Notice of Opportunity to Join a Lawsuit to Recover Back Wages."

### G. Deadline to File Consents.

The court ORDERS Ms. Forauer to file any "Consent to Become a Party Plaintiff" form(s) returned to her attorneys with the court within five (5) business days of their receipt.

### H. Posting Notice at VCS's Worksites.

Ms. Forauer requests that the court order VCS to post notice of this action "at all of its worksites in the same areas in which it is required to post FLSA notices." (Doc. 7-1 at 7.) VCS does not object to this request.

District courts have granted a plaintiff's request to require a defendant to post the notice and consent forms at its worksites, on the basis that potential class members will benefit from the posting of notice at the defendant's places of employment. *See Guzelgurgenli*, 883 F. Supp. 2d at 358-59; *see also Sherrill*, 487 F. Supp. 2d at 351 ("[The defendant] is hereby required to post continuous notice of this action and opt-in forms in a conspicuous location in each of its call centers during the ninety-day opt-in period referenced below. This method, along with the mailing of notices, strikes the appropriate balance between ensuring adequate notification, while also minimizing any disturbance to [the defendant's] workplace.").

The court therefore ORDERS VCS to post notice of the collective action and the consent form at all VCS worksites where telemarking service representatives or customer service representatives work; that VCS post this notice within five (5) days after complying with the disclosure order contained herein; and that notice remain posted for the entirety of the sixty (60) day opt-in period.

## CONCLUSION

For the reasons stated above, the court GRANTS Ms. Forauer's motion for conditional certification of a FLSA collective action and GRANTS IN PART and DENIES IN PART her motion to notify potential class members of the collections action. (Doc. 7.) The court further GRANTS IN PART and DENIES IN PART VCS's cross-motion objecting to the proposed notification to the class. (Doc. 10.)
SO ORDERED.

Dated at Rutland, in the District of Vermont, this 31st day of July, 2013.

_____
Christina Reiss, Chief Judge
United States District Court