U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 NOV 19  PM 3: 15

CLERK
BY _____
   DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DOREEN FORAUER, NANCY J. BART, MICHAEL MULLADY, CANDY MANNING, JOLENE KALANQUIN, GWENDOLYN C. TAFT, COURTNEY TOWLE, CANDICE MAYETTE, ROBERT MIDDLETON, MARISSA FITZGERALD, SUSAN D. CLARK, LINDA J. KASUBA, MATTHEW MARTINDALE, MARK W. MILLER, MARY LOU CAMERON, DONNA G. PRIOLO, RONALD S. AUSTIN, JAMIE TUCKER, CAROLE KULIKOWSKI, DEVON R. AUSTIN, DEBBIE BEZIO, AMANDA PRITCHARD, CAROL JEAN PRITCHARD, LINDA STOCKER REUTHER, and DEBORAH CONNORS, <br><br> Plaintiffs, <br><br> v. <br><br> THE VERMONT COUNTRY STORE, INC., <br><br> Defendant. | Case No. 5:12-cv-276 |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR PROTECTIVE ORDER**
(Doc. 29)

Pending before the court is a motion for a protective order filed by Defendant The Vermont Country Store, Inc. ("VCS"). (Doc. 29.) Plaintiffs oppose the motion. (Doc. 34.) At issue is the nature and scope of permissible communications with the conditionally certified class.

Plaintiffs are represented by Christopher J. Larson, Esq. and Erin H. Gallivan, Esq. VCS is represented by Andrew H. Maass, Esq.

I.      **Factual and Procedural Background.**

In her complaint, Doreen Forauer alleges that VCS required her and other similarly-situated telemarketing sales representatives and customer service representatives to perform certain duties before and after their shifts for which the employees were not compensated. The complaint alleges this practice constituted a violation of 29 U.S.C. § 206, which requires employers to pay all employees at least the minimum wage for all hours worked.

After filing this lawsuit, Ms. Forauer sought conditional certification of a collective action, pursuant to 29 U.S.C. § 216(b), for "a class of all current and former Telemarketing Sales Representatives and Customer Service Representatives employed by The Vermont Country Store within three years prior to the date of the [court's] order, who worked for [The Vermont Country Store] but were not paid minimum wages for a portion of the hours worked." (Doc. 7-1 at 1.) Among other requests, Ms. Forauer requested that the court authorize notice of the collective action to potential class members and approve the contents of that notice.

In this court's July 31, 2013 Opinion and Order (Doc. 19), the court granted Ms. Forauer's motion for conditional certification of a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA"), and the court conditionally certified a class of all current and former telemarketing sales representatives and customer service representatives employed by VCS within three years prior to the date of the Opinion and Order. *See Forauer v. Vt. Country Store, Inc.*, 2013 WL 3967932, at *7 (D. Vt. July 31, 2013). The court further granted Ms. Forauer's motion to notify the potential class members of the collective action and authorized Ms. Forauer to send to potential class members a "Notice of Opportunity to Join a Lawsuit To Recover Back Wages" and a "Consent to Become a Party Plaintiff" form. *Id.* at *7-8. Regarding the specific content of the notice, the court refused Ms. Forauer's request to include, under a section titled "Further Information," one sentence that read, "There is information about this suit at the attorneys' website, www.yourvtlawyer.com." *Id.* at *8. The court declined to include this information "[b]ecause the content of th[e] website ha[d] not been provided to the

2

court to review." *Id.* The court's Opinion and Order set a 60-day period for potential class members to opt-in. *See id.* at *9-10. During the opt-in period, which has not yet expired, twenty-four individuals have filed their consents to join this collective action and have been added as plaintiffs.

Following the court's July 31, 2013 Opinion and Order, Plaintiffs' counsel sent a postcard to potential class members. In addition, Plaintiffs' counsel posted information about the collective action on counsel's website. The postcard, titled "Important Information About Class Action Lawsuit Against Vermont Country Store," states:

> We recently sent you a consent form about a lawsuit against The Vermont County Store. You must return the consent form by November 19, 2013 to join this class action lawsuit. There is no cost to you to join the lawsuit, and the time requirement is minimal. You may be part of the suit even if you did not keep track of the hours that you worked. Please contact me with any questions about this opportunity – you can call me at (802) 747-0610 or email at larson@yourvtlawyer.com. Information is also available at www.yourvtlawyer.com.

(Doc. 29-2 at 2.) The webpage from counsel's website provides information about the "Vermont County Store Lawsuit." (Doc. 29-1 at 1-2.)

In turn, VCS sent a letter to an employee or former employee on September 11, 2013. This letter advised the individual of the lawsuit by Ms. Forauer "claiming that she was required to do work without being paid." (Doc. 34-1 at 1.) The letter further stated: "I am not writing to you to argue this lawsuit: that's what lawyers get paid to do. To those of you who are invited to join in the lawsuit, you will get a notice from the lawyers, and it never has been my place to tell other folks how to lead their lives." *Id.* The letter also outlines the "values" that VCS "stand[s] for," including the belief "that our employees deserve fair pay for a fair day of work." *Id.* Finally, the letter asks the individual "to make your judgments based on our history of supporting our employees and investing in our communities, and not what a lawyer writes in a lawsuit." *Id.*

Based on the postcard and webpage, which VCS contends violate this court's July 31, 2013 Opinion and Order, VCS now moves for a protective order that would "preclude[] Plaintiffs' counsel from communicating with potential collective action

3

members unless using the language that was approved by the Court's Opinion and Order . . . and Addendum." (Doc. 29 at 1.) Specifically, VCS contends that the webpage posted on the website for Plaintiffs' counsel, titled "Vermont County Store Lawsuit," was not authorized by this court and does not follow the language authorized by the court in the notice. VCS requests that the court order Plaintiffs' counsel to remove the webpage "until modified to match the approved language of the [n]otice." *Id.* at 7. Second, VCS contends that the postcard Plaintiffs' counsel sent to potential class members is "inaccurate, misleading, and violates the Court's Opinion and Order . . . as well as the Vermont Rules of Professional Conduct." *Id.* at 5. VCS requests that the court issue an order that "precludes Plaintiffs' counsel from communicating with potential collection action members unless using only the language that was approved by the Court and providing advance notice to VCS so that the language of any communication can be reviewed." *Id.* at 6. Finally, VCS requests the court's permission to send its own communication to potential class members "inviting them to contact VCS with any questions on the lawsuit." *Id.*

Plaintiffs oppose the motion for a protective order, asserting primarily that parties are generally allowed to communicate with potential class members and that a court may impose limitations on such communications only when narrowly tailored to prevent abuse. (Doc. 34 at 1-3.) Plaintiffs further argue that this court's July 31, 2013 Opinion and Order did not prohibit post-notice communications with potential class members and that a protective order is "unnecessary" and "unworkable" as it would effectively "preclude the Plaintiffs' attorneys from any communication different from the Court-authorized language." *Id.* at 3-5.

## II.    Conclusions of Law and Analysis.

In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the Supreme Court recognized the "potential problems" that can arise out of communications between parties, counsel, and potential class members and that this "potential for abuse" provides district courts "the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* at 100-01. Noting

4

this discretion is "bounded" and "not unlimited," however, the Supreme Court dictated that any "order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* "[S]uch a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102; *see also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 602 (2d Cir. 1986) (requiring order "to curb the abuses found by the court," or at least be "a reasonable effort to respond to real and potential problems"). The court must look for "less burdensome remedies" so that any restrictions on communications do not interfere "with the formation of a class or the prosecution of a class action." *Gulf Oil*, 452 U.S. at 104.

While *Gulf Oil* involved a class action proceeding under Fed. R. Civ. P. 23, the Supreme Court in *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), cited *Gulf Oil* and noted that the "same justifications" for "governing the conduct of counsel and the parties" in order to mitigate "the potential for abuse" apply in a FLSA collective action. *Id.* at 171 (internal quotation marks omitted). A court's authority to regulate communications between counsel and parties stems from the court's "managerial responsibility" over FLSA collective actions "to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 169-71 (holding that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs" and by allowing discovery of the names and addresses of potential class members and explaining that it is "within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time"). District courts have likewise applied *Gulf Oil* to FLSA collective actions. *See Fengler v. Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 261-62 (N.D.N.Y. 2009) (applying *Gulf Oil* and noting that "[o]rders limiting the communications of the parties and counsel fall within the purview of a district court managing a class action" under the FLSA); *see also Brown v. Mustang Sally's Spirits &*

5

*Grill, Inc.*, 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012) ("Courts have the authority in both Rule 23 class actions and FLSA collective actions (29 U.S.C. § 216(b)) to enter appropriate orders governing the conduct of counsel and parties.").

The court's first task under *Gulf Oil* is to consider whether any abuse or potential for abuse warrants limiting communications with potential class members. In this case, neither party has violated the court's July 31, 2013 Opinion and Order because nothing in that Opinion and Order expressly prohibited the parties from communicating with potential class members. *Gulf Oil* instructs that parties retain their ability to communicate with potential class members absent a court-ordered restriction. *See Gulf Oil*, 452 U.S. at 101-02; *Rossini*, 798 F.2d at 601-02.

Even if the parties may send post-notice communications, VCS contends that those communications must comport with the language approved in the notice. VCS thus requests the court to order that Plaintiffs may communicate with potential class members using only the language of the notice. VCS misconstrues the import of court-approved notice. Because notice bears the name and imprimatur of the court, the court must review the specific content of the notice and consent form and the representations contained therein to "ensure" that notice is "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172; *see also Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) ("It is the responsibility of the court to direct the best notice practicable to class members, and to safeguard them from unauthorized, misleading communications from the parties or their counsel.") (internal citation and quotation marks omitted). VCS cites no authority for the proposition that thereafter all communications with potential class members must be managed and monitored by the court. To the contrary, a court "must not interfere with *any* party's ability to communicate freely with putative class members, unless there is a specific reason to believe that such interference is necessary." *Austen v. Catterton Partners V, LP*, 831 F. Supp. 2d 559, 567 (D. Conn. 2011). Any restrictions on communications must be based on a consideration of whether "potential problems" that arise specifically in class or collective actions require such restrictions. *Gulf Oil*, 452 U.S. at 101-02; *see also Brown*, 2012 WL 4764585, at *5 (concluding the

6

court was "precluded from any significant restraint on the parties' communications with potential class members because this record [did] not support a finding of actual abuse" but finding a "limited order [was] warranted, however, in order to guard against the likelihood that participation in the class action would be chilled by such abuse").

Here, VCS contends such restrictions are warranted because discrepancies between the court's approved notice and post-notice communications could be confusing or misleading to potential class members. VCS is correct that a court managing a FLSA collection action "has a substantial interest in communications that are mailed for single actions involving multiple parties," including the prevention of "misleading communications." *Hoffmann-La Roche*, 493 U.S. at 171. The court's "duty and authority . . . to protect the integrity of the potential class" extends to "'communications that mislead or otherwise threaten to create confusion,'" or that influence the decision of whether to opt-in. *Hinds County, Miss. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011) (quoting *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 569 (S.D.N.Y. 2004)); *see also Gordon v. Kaleida Health*, 737 F. Supp. 2d 91, 99 (W.D.N.Y. 2010) ("To be sure, the court's interest in preventing undue confusion among putative members of class or FLSA collective actions under its supervision during the certification and notification phases of the case is a substantial one.").

VCS is also correct that the webpage and postcard contain certain language that may cause confusion if read in isolation; however, read as a whole, the webpage accurately explains who is authorized to join the action. It also does not improperly "reference[] several factual issues," as VCS contends (Doc. 29 at 2-3), because the information provided under the heading "How were employees underpaid?" is framed as claims and contentions and not as facts. (Doc. 29-1 at 1.) This information therefore does not run afoul of this court's concerns in its July 31, 2013 Opinion and Order that any notice should not "assume[] that employees have performed work for which they should have been paid, which is an unresolved factual issue in this case." *Forauer*, 2013 WL 3967932, at *8. The court finds that the entirety of the webpage is not so misleading or

7

confusing as to require the court to dictate to Plaintiffs' counsel the content of counsel's webpage or order it removed.

Both parties' post-notice communications, however, raise potential conflicts with the Supreme Court's directive in *Hoffmann-La Roche* that a district court managing a FLSA collective action "must be scrupulous to respect judicial neutrality" and "to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174 (cautioning further that "intervention in the notice process for case management purposes [must be] distinguishable in form and function from the solicitation of claims"); *see also Brown*, 2012 WL 4764585, at *2 ("The primary purpose in supervising communications is to ensure that potential members receive accurate and impartial information regarding the status, purposes and effects of the class action.") (internal quotation marks and alteration omitted). It is for this reason that the district court carefully manages the authorization of notice and its content because any discrepancies between the court-authorized notice and subsequent communications could undermine the district court's responsibility to remain neutral in the process. Here, the webpage states that the "Federal Court has ordered that notice should be sent" (Doc. 29-1 at 1), but it omits the language this court expressly directed the notice to include: "This notice has been authorized by the United States District Court for the District of Vermont; however, the United States District Court **has made no decision in this case about the merits of the Plaintiff's claim or VCS's defenses.**" (Doc. 19-1 at 4.) The webpage also omits any explanation that the class is only conditionally certified and that the "continued right to participate in this action will depend upon a later decision by the court that you and the named Plaintiff are 'similarly situated' in accordance with applicable laws and that it is appropriate for this case to proceed as a collective action." (Doc. 19-1 at 2-3.) The language of the webpage may therefore suggest to potential class members that this court has issued a final determination that the lawsuit will proceed as a collective action and that this court has essentially endorsed "the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174. This undermines judicial neutrality and may be misleading or confusing to potential class members. *See Ruggles v. WellPoint, Inc.*, 591

8

F. Supp. 2d 150, 164 (N.D.N.Y. 2008) (explaining that once the court "is fully engaged in supervising th[e] notice process," the court must seek to minimize any "apparent conflict between the court-authorized notice and those communications made by counsel to potential plaintiffs" and that the "[f]ailure to limit notification to a single process would be dissonant with the intent of the FLSA statute that the [c]ourt play a significant role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class on whose behalf the collective action was commenced").

The court's concerns are not limited to Plaintiffs' communications with potential class members. *See Austen*, 831 F. Supp. 2d at 567 ("[T]he principles set forth in *Gulf Oil* and other cases regarding a district court's authority to impose restrictions on communications with putative class members apply to restrictions on plaintiffs' communications and defendants' communications alike.") (citing Manual for Complex Litigation (Fourth) § 21.12 (2004) ("Direct communications with class members, . . . whether by plaintiffs or defendants, can lead to abuse.")). VCS's correspondence with an employee or former employee may also be misleading or confusing to potential class members concerning the validity of the collective action. The letter addressed the lawsuit brought by Ms. Forauer "claiming that she was required to do work without being paid." (Doc. 34-1 at 1.) The letter implies the collective action is without merit since VCS "believe[s] that [its] employees deserve fair pay for a fair day of work" and since VCS "ask[s] [its employees] to make [their] judgments based on [VCS's] history of supporting [its] employees and investing in [the] communities, and not what a lawyer writes in a lawsuit." *Id.* The implication regarding the merits of the action is particularly acute here given "the risk of explicit or implicit coercion in the employment context." *Lujan v. Cabana Mgmt., Inc.*, 2011 WL 3235628, at *2 (E.D.N.Y. July 27, 2011); *see also Zamboni v. Pepe West 48th St. LLC*, 2013 WL 978935, at *3 (S.D.N.Y. Mar. 12, 2013) (recognizing that "[i]n some circumstances where there is an ongoing and unequal business or employment relationship between the parties, communications may be deemed inherently coercive").

9

In sum, the court finds that both parties' post-notice communications demonstrate the "need" for limited court intervention. *See Gulf Oil*, 452 U.S. at 101-02 (requiring a finding "of the need for a limitation"). The court therefore ORDERS that both parties must refrain from any statement to potential class members or existing class members that the court has ruled on the merits of the lawsuit or otherwise endorsed the parties' positions, including Plaintiffs' claims or VCS's defenses. Any statement regarding the status of class certification must also accurately reflect the court's July 31, 2013 Opinion and Order and any orders regarding class certification issued thereafter.

The court concludes that this limited intervention has no "potential [to] interfere[] with the rights of the parties" and will limit "speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil*, 452 U.S. at 101-02 (explaining that courts should consider whether limitations on communications would "interfere[] with . . . efforts to inform potential class members . . . of th[e] lawsuit" and would make "it more difficult . . . to obtain information about the merits of the case from the persons [plaintiffs] s[eek] to represent"); *see also Gordon*, 737 F. Supp. 2d at 98 (explaining "the employees' important interests, created by the FLSA, to be appraised of [p]laintiffs' qualifiedly certified collective action and their right to elect to consent to join in the action to gain the additional compensation to which [p]laintiffs assert they and similarly situated employees are entitled"); *Hinterberger v. Catholic Health Sys., Inc.*, 2010 WL 3395672, at *12 (W.D.N.Y. May 13, 2010) (explaining that plaintiffs in a FLSA action "have a right to seek information from putative class members").

As a final matter, VCS has requested the court's permission to send its own communications to potential class members inviting them to contact VCS with any questions about the lawsuit. Nothing in this court's July 31, 2013 Opinion and Order prohibits VCS from contacting potential class members, and indeed VCS has already sent at least one letter. Accordingly, VCS need not seek the court's permission to send post-notice communications, provided future communications do not violate counsel's ethical

10

duties and responsibilities and are not coercive in nature.[1] Because Plaintiffs have not sought a protective order to limit VCS's communications, the court will not order any such limitation *sua sponte*.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART VCS's Motion for a Protective Order. Nothing in this Opinion and Order precludes the parties and counsel from communicating, orally or in writing, with potential class members, apart from the limited order contained herein and provided counsel complies with their ethical duties and responsibilities.

The court ORDERS that both parties must refrain from any statement to potential class members or existing class members that the court has ruled on the merits of the lawsuit or otherwise endorsed the parties' positions, including Plaintiffs' claims or VCS's defenses and that any statement regarding the status of class certification must accurately reflect the court's July 31, 2013 Opinion and Order and any orders regarding class certification issued thereafter.

The court DENIES VCS's motion for a protective order that would preclude Plaintiffs' counsel from communicating with potential class members unless using the

---

[1] Numerous courts in the Second Circuit have recognized that the "workplace relationship with current employees, and [the employer's] knowledge of sensitive information about current and former employees, put[s] [the employer] in a position to exercise strong coercion in connection with potential class members' decisions regarding participation in this litigation." *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 485 (S.D.N.Y. 2012); *see also Zamboni*, 2013 WL 978935, at *3; *Brown*, 2012 WL 4764585, at *3; *Lujan*, 2011 WL 3235628, at *2; *Wu v. Pearson Educ., Inc.*, 2011 WL 2314778, at *6 (S.D.N.Y. June 7, 2011); *Gortat v. Capala Bros., Inc.*, 2009 WL 3347091, at *11 (E.D.N.Y. Oct. 16, 2009). Because "courts have a responsibility to restrict communications that are potentially coercive or misleading," *Zamboni*, 2013 WL 978935, at *3, district courts often impose extensive restrictions on an employer's communications with employees. *See Brown*, 2012 WL 4764585, at *3 (prohibiting employer from speaking with potential class members regarding the litigation); *Urtubia*, 857 F. Supp. 2d at 485 (prohibiting employer from communicating with any potential class member regarding the lawsuit and its subject matter other than through the class member's counsel, if any, absent prior permission from the court); *Lujan*, 2011 WL 3235628, at *2-3 (declining to order "a blanket ban on communications with employees" but ordering defendants' counsel to "advise defendants that they and their supervisory employees may not, apart from posting or emailing approved notices, direct or encourage any employee to contact defendant's counsel") (footnote omitted).

language approved by the court's prior Opinion and Order; DENIES VCS's motion for a protective order that would require Plaintiffs' counsel to remove the webpage on the lawsuit until modified to correspond with the notice; and DENIES VCS's motion for a protective order that would require Plaintiffs to provide advance notice to VCS of any written communications so that VCS can preview the communications.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 19th day of November, 2013.

*/s/ Christina Reiss*

Christina Reiss, Chief Judge
United States District Court