UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 JAN 16  PM 4: 01

BY_____
DEPUTY CLERK

| | |
|---|---|
| DOREEN FORAUER, NANCY J. BART,<br>MICHAEL MULLADY, CANDY MANNING,<br>JOLENE KALANQUIN, GWENDOLYN C.<br>TAFT, COURTNEY TOWLE, CANDICE<br>MAYETTE, ROBERT MIDDLETON,<br>MARISSA FITZGERALD, SUSAN D.<br>CLARK, LINDA J. KASUBA, MATTHEW<br>MARTINDALE, MARK W. MILLER,<br>DONNA G. PRIOLO, RONALD S. AUSTIN,<br>JAMIE TUCKER, CAROLE KULIKOWSKI,<br>DEVON R. AUSTIN, DEBBIE BEZIO,<br>AMANDA PRITCHARD, CAROL JEAN<br>PRITCHARD, LINDA STOCKER REUTHER,<br>and DEBORAH CONNORS,<br><br>        Plaintiffs,<br><br>v.<br><br>THE VERMONT COUNTRY STORE, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 5:12-cv-276<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER GRANTING THE
STIPULATED MOTION TO APPROVE SETTLEMENT**
(Doc. 75; Doc. 90)

Pending before the court is a joint motion to approve a settlement agreement (the

"Settlement Agreement") between Plaintiffs, who include named Plaintiff, Doreen

Forauer, and twenty-three opt-in Plaintiffs, and Defendant Vermont Country Store, Inc.

("VCS"). In this collective action brought under the Fair Labor Standards Act (the

"FLSA"), Plaintiffs allege that VCS required them and other similarly-situated

employees to perform certain duties before, during, and after their shifts for which they

were not compensated in violation of 29 U.S.C. § 206, which requires employers to pay

all employees at least the minimum wage for all hours worked.  VCS denies that it has violated the FLSA.

The parties have agreed to settle the pending action.  Pursuant to their Settlement Agreement, VCS is to pay a lump sum of $22,000, of which the opt-in Plaintiffs are to receive approximately $6,060 in damages.  Plaintiffs' counsel requests $11,205.52 in fees and $4,733.50 in costs.  The Settlement Agreement also included "a general release of all claims relating in any way to [each Plaintiff's] employment at VCS."  (Doc. 75-1 at 4, ¶ V.)

The court held a Fairness Hearing on December 8, 2014, at which time the court raised concerns about, *inter alia*, the scope of the general release in the Settlement Agreement and the failure of Plaintiffs' counsel to submit documentation to support the request for attorney's fees and costs.  At the conclusion of the Fairness Hearing, the court ordered Plaintiffs' counsel to submit documentation of their attorney's fees and costs, which counsel submitted on December 10, 2014.  (Doc. 88.)

On December 24, 2014, the parties submitted a joint stipulation to amend the Settlement Agreement in light of the parties' agreement to limit the release provision in the Settlement Agreement to a release of "all claims of lost wages and benefits."  (Doc. 90 at 1.)  The parties also submitted a draft "Release of Claims for Wages and Benefits." (Doc. 90-2.)  The court granted the joint stipulation to amend the Settlement Agreement on December 30, 2014, (Doc. 92), at which time it took the matter of final approval of the Settlement Agreement under advisement.

Plaintiffs are represented by Christopher J. Larson, Esq. and Erin H. Gallivan, Esq. VCS is represented by Andrew H. Maass, Esq.

I.    **Factual and Procedural Background.**

    A.    **Factual Allegations Underpinning the FLSA Claims.**

Plaintiffs allege VCS required both the telemarketing sales representatives and customer service representatives, who "went through the same processes before [and] after shifts," to complete "the same pre-shift and post-shift activities" off the clock and that these employees were subject to the same policies.  (Doc. 18 at 2, 6.)  Specifically,

2

Plaintiffs allege the unpaid work VCS required them to perform before their call shifts included turning on, booting up, and logging into their computers and various software programs, including a timekeeping software; reviewing emails and messages prior to the start of their shifts; and starting up VCS's website and their phones. Plaintiffs further allege the unpaid work VCS required them to perform during their breaks and at the end of their shifts included closing down the phone, website, software, and computer; documenting daily activities; and reviewing the work schedule and requesting schedule changes. For example, the named Plaintiff, Ms. Forauer, alleges that she spent between twenty to thirty minutes per shift completing work for which she was not compensated.

Plaintiffs allege that VCS knew its employees were not being compensated for this additional work and that VCS did not have a process for employees to recover wages for time spent completing this additional work. They further allege that VCS instructed its employees "to arrive before their scheduled shifts in order to perform preliminary activities in order to be ready to take calls the moment their scheduled shifts began." (Doc. 1 at 4, ¶ 16.) If employees were not ready to take calls at the minute their shifts began or at the minute their breaks ended, or if employees logged out before their shifts ended, VCS allegedly reprimanded employees. The named Plaintiff, Ms. Forauer, asserts she was personally reprimanded on this basis. In addition, VCS allegedly had "policies in place" whereby an employee's performance scores were adversely affected if an employee was not ready to take calls every minute of a scheduled shift. (Doc. 1 at 4, ¶ 16.)

### B.   Procedural History.

After filing the pending action on December 11, 2012, Ms. Forauer, the named Plaintiff, sought conditional certification of a collective action, pursuant to 29 U.S.C. § 216(b), for "a class of all current and former Telemarketing Sales Representatives and Customer Service Representatives employed by The Vermont Country Store within three years prior to the date of the [court's] order, who worked for [The Vermont Country Store] but were not paid minimum wages for a portion of the hours worked." (Doc. 7-1 at 1.) On July 31, 2013, the court granted Ms. Forauer's motion for conditional

3

certification of a collective action under the FLSA and conditionally certified a class of all current and former telemarketing sales representatives and customer service representatives employed by VCS within three years prior to the date of the July 31, 2013 Opinion and Order. *See Forauer v. Vt. Country Store, Inc.*, 2013 WL 3967932, at *7 (D. Vt. July 31, 2013). During the pendency of the subsequent 60-day opt-in period, twenty-four Plaintiffs filed their consents to become a party plaintiff.

Over the course of discovery, fourteen of the opt-in Plaintiffs were deposed, and Defendant produced records concerning its timekeeping procedures and the log-in and log-out information for each opt-in Plaintiff. At the close of discovery, the parties filed a joint motion for approval of the Settlement Agreement. (Doc. 75.) On August 27, 2014, the court preliminarily granted the parties' motion for approval of the Settlement Agreement, and the court authorized notice of the Settlement Agreement to the opt-in Plaintiffs. (Doc. 77.) During the course of the notice and comment period, none of the opt-in Plaintiffs submitted objections to the Settlement Agreement.

Following the court's preliminary approval of the Settlement Agreement, Plaintiffs filed a motion to remove one opt-in Plaintiff, Mary Lou Marcell-Cameron (Doc. 80), which the court granted with the provision "that the proposed total settlement amount be reduced by the allocated settlement amount for Mary Lou Marcell-Cameron." (Doc. 84.) While VCS requested that the court also reduce the amount allocated for attorney's fees in proportion to the reduction in the number of opt-in Plaintiffs, (Doc. 82), which Plaintiffs' counsel opposed, (Doc. 83), the court reserved decision regarding whether to reduce the request for attorney's fees until after the comment period and Fairness Hearing.

At the court's Fairness Hearing, none of the opt-in Plaintiffs presented objections.

## C.    The Terms of the Settlement Agreement.

Under the terms of the Settlement Agreement, VCS will pay a lump sum of $22,000 for "any and all back wages and/or overtime and any and all other damages each opt-in Plaintiff claims he/she is owed under the allegations of the Lawsuit" and "which may be owed to Plaintiffs' counsel for all attorneys fees, costs and expenses for and

4

related to the Lawsuit." (Doc. 75-1 at 1, ¶ 1.) The amount of the lump sum payment each opt-in Plaintiff is to receive is based on an approximation of the number of minutes or hours each Plaintiff allegedly worked without pay multiplied by that Plaintiff's last rate of pay.[1] If a Plaintiff's estimated unpaid wages is less than $100, the Plaintiff will receive in damages a payment of $100. Fifteen of the Plaintiffs are to receive $100 in damages. If a Plaintiff's estimated unpaid wages exceed $100, the Plaintiff will receive double his or her estimated unpaid wages. Nine of the Plaintiffs are to receive damages in excess of $100 based on his or her estimated unpaid wages. The Settlement Agreement states that each Plaintiff agrees "that the amount he/she will receive in settlement is fair and reasonable compensation" for the alleged back wages and other potential damages owed by VCS. (Doc. 75-1 at 3, ¶ III.) Under the terms of the Settlement Agreement, total damages to be paid to Plaintiffs amounts to $6060.98. (Doc. 75-1 at 6, Ex. A.) The remainder of the lump sum payment is to be distributed to Plaintiffs' attorneys, who request $11,205.52 in fees and $4,733.50 in costs. (Doc. 75-3 at 6.)

The opt-in Plaintiffs and VCS have further agreed to the following "terms and conditions": (1) that "this is a settlement of a genuine and bona fide dispute" of the claims asserted regarding federal and state "wage and hour requirements"; (2) that the settlement "has been achieved in recognition of the risks to all parties in pursuing final judgment from the court"; and (3) that the settlement "is the result of arm's length and good faith negotiations between counsel for the parties and is a voluntary and agreeable meeting of the minds of all parties." (Doc. 75-1 at 1-2, ¶ III.) The Settlement Agreement states that VCS denies any wrongdoing or liability; that the parties agree that the "settlement is over disputed claims with no party admitting liability or wrongdoing"; and that VCS "had objective evidence to dispute all claims presented in the action." (Doc. 75-1 at 1-2, ¶ III.)

---

[1] The approximation of time worked without pay is based on the amount of time between a Plaintiff logging in to his or her computer and a Plaintiff logging in to VCS's time-keeping software (called Ultipro).

The Settlement Agreement notes that it is subject to the court's approval and allows either the opt-in Plaintiffs or VCS to withdraw from the Settlement Agreement if "the terms" are "not approved by the Court to the satisfaction of [the] opt-in Plaintiffs or VCS." (Doc. 75-1 at 3-4, ¶ IV.)  Moreover, if any opt-in Plaintiff is dissatisfied with the Settlement Agreement "for any reason, including but not limited to the consideration he/she is designated to receive, then VCS has the option to withdraw its participation from this settlement in full and to no longer be bound by [its] terms and conditions," provided VCS gives written notice to Plaintiffs' counsel within ten days. (Doc. 75-1 at 3-4, ¶ IV.)  The opt-in Plaintiffs agree that, "as to each opt-in Plaintiff," dismissal will be with prejudice. (Doc. 75-1 at 4, ¶ VI.)

The Settlement Agreement also provides that "any damages allocated to opt-in Plaintiffs that are not recovered within 180 days of issuance will be cancelled and those funds will be distributed" to the Rutland County Parent Child Center's Vermont Country Store Good Neighbor Fund and the Vermont Bar Foundation. (Doc. 75-1 at 3, ¶ III.)

### D.    The Amended Release Provision.

Following the Fairness Hearing in which the court raised concerns regarding the scope of the general release in the Settlement Agreement, the parties submitted on December 24, 2014 a joint stipulation to amend the Settlement Agreement. (Doc. 90.) The parties have agreed to and have submitted to the court an amended release (the "Amended Release"):

> Each opt-in Plaintiff will provide to VCS a Release Of Claims For Wages and Benefits for all claims of lost wages and benefits relating in any way to his/her employment at VCS including but not limited to: any claims for back wages, overtime, liquidated damages, interest, costs, expenses, and attorney fees and any and all other claims that were or could have been asserted in their collective action alleging failure to be compensated as required under the Fair Labor Standards Act. The Release shall be effective for claims arising on or before the date the Release is signed. There are no opt-in Plaintiffs that are currently employed by VCS.

(Doc. 90-1 at 4, ¶ V.)  The remaining provisions of the Settlement Agreement are "unchanged in all other respects." (Doc. 90 at 2.)  The parties also submitted a draft

"Release of Claims for Wages and Benefits" for opt-in Plaintiffs to sign that explains that the Amended Release covers:

> any and all grievances, charges, claims, complaints, lawsuits, liabilities, expenses, costs, and attorneys' fees of any nature whatsoever, now known or unknown, that OPT-IN PLAINTIFF now has or may have for payment of any wages or benefits while employed at VCS, as asserted or could be asserted in the Lawsuit[,] including any and all State and Federal law claims and causes of action for back pay, overtime pay, any benefits received or eligible for while employed by VCS, and for any entitlement or claim for liquidated damages, interest, costs, expenses and/or attorney fees.

(Doc. 90-2 at 1.)  The draft "Release of Claims for Wages and Benefits" further notes that the Amended Release "pertains to any and all wage, benefit and related claims noted above that arose on or before the date OPT-IN PLAINTIFF signed [the Amended] Release, whether known or unknown, but does not apply to future employment, if any, of OPT-IN PLAINTIFF by VCS." *Id.*  Finally, the draft "Release of Claims for Wages and Benefits" requires each opt-in Plaintiff to acknowledge:

> **[a] she/he has read this Release and the underlying [S]ettlement Agreement; [b] has conferred with his/her attorney before signing this Release; [c] he/she had an opportunity to object to settlement but chose not to; [d] understands all of the terms of this Release; and, [e] has entered into and signed this Release KNOWINGLY, VOLUNTARILY AND OF HER/HIS OWN FREE WILL.**

*Id.*  On December 30, 2014, the court approved the parties' joint stipulation to amend the Settlement Agreement.  (Doc. 92.)

## II.   Conclusions of Law and Analysis.

The FLSA, which establishes federal minimum-wage, maximum-hour, and overtime guarantees, also "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA," and "[a] suit brought on behalf of other employees is known as a 'collective action.'" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013) (quoting 29 U.S.C. § 216(b)).  Plaintiffs in a collective action may not settle their FLSA claims for less than their full statutory damages unless the settlement is supervised

by the Secretary of Labor or made pursuant to a judicially-supervised stipulated
settlement. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012);
*accord Ordonez v. Mio Posto Rest., Inc.*, 2014 WL 4075996, at *1 (E.D.N.Y. Aug. 14,
2014); *Chambery v. Tuxedo Junction Inc.*, 2014 WL 3725157, at *2 (W.D.N.Y. July 25,
2014).

However, "[a] collective action under the FLSA is different from the typical class
action under the Federal Rules of Civil Procedure, the strict requirements of which—
numerosity, commonality, typicality, and adequate representation—do not apply to a
collective action." *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014).
Instead, the FLSA requires that plaintiffs in a FLSA action, other than the named
plaintiff, must opt-in: "No employee shall be a party plaintiff to any such action unless he
[or she] gives his [or her] consent in writing to become such a party and such consent is
filed in the court in which such action is brought." 29 U.S.C. § 216(b); *see also Shahriar
v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("The FLSA
requires . . . that an employee affirmatively consent to join a 'collective action' in order
to assert a claim [as opposed to a] traditional 'opt-out' class action."). "Because, under
the FLSA, parties may elect to opt in but a failure to do so does not prevent them from
bringing their own suits at a later date, FLSA collective actions do not implicate the same
due process concerns as Rule 23 actions," and "the high standard for approval . . . under
Rule 23 does not apply to [a] FLSA settlement." *Kiefer v. Moran Foods, LLC*, 2014 WL
3882504, at *7 (D. Conn. Aug. 5, 2014) (internal quotation marks omitted); *accord
Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 WL 3778173, at *7
(S.D.N.Y. July 31, 2014).

While "[t]he standard for approval of [a] FLSA settlement is significantly lower
than for a Rule 23 settlement," *Flores v. One Hanover, LLC*, 2014 WL 2567912, at *6
(S.D.N.Y. June 9, 2014), district courts in the Second Circuit have noted that "special
consideration must be paid to any proposed settlement in order to guard against an
employer's possible coercion of a waiver or settlement from employees." *Brown v.
Mustang Sally's Spirits & Grill, Inc.*, 2013 WL 416303, at *1 (W.D.N.Y. Jan. 31, 2013)

8

(citing *Volberg v. A.D. Winston Servs., Inc.*, 2012 WL 1415051, at *1 (E.D.N.Y. Apr. 20, 2012)). Accordingly, "the district court must scrutinize the settlement agreement to determine that the settlement is fair and reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (alteration in original) (quoting *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)); *accord Chapman-Green v. Icahn House W. LLC*, 2013 WL 658245, at *1 (S.D.N.Y. Feb. 21, 2013).

District courts in the Second Circuit "approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Clem v. Keybank, N.A.*, 2014 WL 2895918, at *7 (S.D.N.Y. June 20, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *accord Dixon v. Zabka*, 2013 WL 2391473, at *2 (D. Conn. May 23, 2013). District courts in the Second Circuit also consider the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *2 (S.D.N.Y. Mar. 20, 2014) (internal quotation marks omitted).

### A.    Factors in Support of Approval of the Settlement Agreement.

The Settlement Agreement was reached as a result of a "contested litigation" to resolve *bona fide* disputes—both factual and legal disputes that remain unresolved. *Flores*, 2014 WL 2567912, at *6; *see also Bozak v. FedEx Ground Package Sys., Inc.*,

2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA settlement and noting that settlement was reached after negotiations concerning "the uncertain legal and factual issues involved"). It was entered into "after an investigation of the claims and defenses," *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014), and after the parties engaged in "extensive discovery and damages calculations." *Flores*, 2014 WL 2567912, at *6. The Settlement Agreement was "also the product of negotiation between represented parties," supporting a finding that it "did not come about because of 'overreaching' by the employer." *Lliguichuzhca*, 948 F. Supp. 2d at 365-66 ("Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable."); *accord Hernandez v. Tabak*, 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013) (concluding settlement "negotiated at arm's length [was] not the product of coercion").

The fact that Plaintiffs were represented by counsel supports a further finding that they have accepted the Settlement Agreement "without fear of potential overreaching by [VCS]" because Plaintiffs were able to consult with counsel throughout discovery to identify and fully understand the strengths and weaknesses of their factual and legal claims. *Brown*, 2013 WL 416303, at *1 (examining whether the litigation had "developed enough to allow Plaintiffs to identify the disputed issues and, with the assistance of counsel, make an informed decision about accepting the Stipulation and Consent Decree without fear of potential overreaching by Defendants"). Because the Settlement Agreement is the "product of arm's-length bargaining" between counsel for Plaintiffs and VCS, there is no concern that it was reached through "fraud or collusion." *Thornhill*, 2014 WL 1100135, at *2 (internal quotation marks omitted).

Finally, none of the opt-in Plaintiffs submitted objections prior to the hearing or otherwise opposed the Settlement Agreement. The reaction of the class may thus fairly be characterized as favorable. At this juncture in the case, the Settlement Agreement "gives [P]laintiffs immediate relief and avoids the risk, which is not insubstantial, of a potential loss or a much smaller recovery," *Chapman-Green*, 2013 WL 658245, at *2, and "will enable the parties to avoid anticipated burdens and expenses in establishing

10

their respective claims and defenses. It also enables the parties to avoid litigation risk."
*Medley v. Am. Cancer Soc'y*, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010).

For these reasons, the court finds that the Settlement Agreement generally
"reflects a reasonable compromise over contested issues." *Bozak*, 2014 WL 3778211, at
*3. There are, however, two issues that warrant further discussion but that do not
preclude approval of the Settlement Agreement at this juncture.

## B.     The Range of Possible Recovery.

In evaluating a FLSA settlement, the court must also assess "the plaintiff's range
of possible recovery." *Thornhill*, 2014 WL 1100135, at *2. Pursuant to the FLSA, VCS
is potentially "liable to the employee or employees affected in the amount of their unpaid
minimum wages . . . and in an additional equal amount as liquidated damages." 29
U.S.C. § 216(b).

Here, all Plaintiffs whose estimated unpaid wages exceed $99 are to receive
double those wages, which fully compensates those Plaintiffs for their unpaid wages, as
well as their liquidated damages, pursuant to 29 U.S.C. § 216. All Plaintiffs whose
estimated unpaid wages are less than $99 are to receive $100, regardless of whether those
estimated unpaid wages are at the least $0 or at the most $84.33. For all of those
Plaintiffs whose estimated damages are less than $50, they are receiving all, if not more,
to which they would be entitled under the FLSA because a damages award of $100 fully
compensates them for both their unpaid wages and their liquidated damages pursuant to
29 U.S.C. § 216. *See Chapman-Green*, 2013 WL 658245, at *2 (approving settlement
compensating plaintiffs approximately 89 percent of what they claimed as their unpaid
wages); *Hernandez*, 2013 WL 1562803, at *1 (approving settlement of $7370 for plaintiff
when the maximum possible recovery that plaintiff could have received totaled
$19,242.67 only if plaintiff succeeded in proving violations of both the FLSA and state
law, established willfulness, and received liquidated damages under both statutes);
*Volberg*, 2012 WL 1415051, at *2 (approving settlement when the amount plaintiff
would receive was "roughly half the greatest amount plaintiff could have possibly
received").

11

However, the estimated unpaid wages for three of the opt-in Plaintiffs exceed $50, including Carole Kulikowski ($60.42), Donna Priolo ($60.00), and Linda Stocker Reuther ($84.33). Because these three Plaintiffs will receive only $100 in damages, they will be compensated for their unpaid wages, but they will not be compensated for "an additional equal amount as liquidated damages" pursuant to 29 U.S.C. § 216. Thus, the Settlement Agreement compensates all opt-in Plaintiffs for at least both their unpaid wages and liquidated damages, except for these three opt-in Plaintiffs, who will receive their unpaid wages and only a portion of their liquidated damages. While there is no requirement that plaintiffs in a FLSA collective action receive the full amount in damages potentially owed to them under the FLSA, there is no stated or apparent reason for this difference in compensation. *See Gambrell v. Weber Carpet, Inc.*, 2012 WL 5306273, at *5-6 (D. Kan. Oct. 29, 2012) (assessing whether settlement was "fair and equitable to all parties" and noting the parties had "not provided information sufficient to account for differences in the proposed settlement amounts to class members"). Because the Settlement Agreement is otherwise fair and reasonable in terms of the compensation provided for the opt-in Plaintiffs as it will compensate the remainder of Plaintiffs for at least both their unpaid wages and "an additional equal amount as liquidated damages" pursuant to 29 U.S.C. § 216, any discrepancy for the three opt-in Plaintiffs may be cured through minor adjustments in the allocation of the settlement funds. The court will afford the parties an opportunity to object to this minor adjustment before it becomes final.

For the reasons stated above, the court conditionally ORDERS that Carole Kulikowski, Donna Priolo, and Linda Stocker Reuther receive in total double their estimated unpaid wages to account for both unpaid wages and liquidated damages, with Carole Kulikowski to receive $120.84, Donna Priolo to receive $120.00, and Linda Stocker Reuther to receive $168.66. The court ORDERS that the difference between the original amount allocated to these three opt-in Plaintiffs ($300.00 total) and the amount ordered to be allocated to these three opt-in Plaintiffs ($409.50 total) is to be paid from the amount allocated for attorney's fees. In accordance with its previous order addressing Plaintiffs' motion to remove one opt-in Plaintiff (Doc. 84), the court further ORDERS

that the total settlement amount of $22,000 be reduced by $100, which was the award allocated to the opt-in Plaintiff, Mary Lou Marcell-Cameron, who has been removed from this action. The court ORDERS that any objections to the changes in compensation and reallocation from attorney's fees be filed within ten (10) days of this Opinion and Order.

### C.    The Scope of the Amended Release.

Generally, plaintiffs in a "class action may release claims that were or could have been pled in exchange for settlement relief"; however, their "authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). "Any released claims not presented directly in the complaint . . . must be based on the identical factual predicate as that underlying the claims in the settled class action." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011) (internal quotation marks omitted); *see Wal-Mart Stores, Inc.*, 396 F.3d at 107 ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.").

While the Second Circuit has not addressed whether the same doctrines apply to evaluate the validity of a release in a FLSA collective action, the Supreme Court has consistently instructed that an individual's FLSA rights "'may not be waived or released if such waiver or release contravenes the statutory policy.'" *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 408 (2d Cir. 2014) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945)). As a result, the "Supreme Court and lower courts have consistently rejected broad waivers of FLSA rights" because "a pervasive release in [a] FLSA settlement . . . confers an uncompensated, unevaluated, and unfair benefit on the employer [that] should be examined closely." *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *8 (D.N.J. Mar. 26, 2012) (rejecting release as "pervasive" that required plaintiffs to release "any and all" prospective FLSA claims) (citing, *inter alia*, *Hogan v. Allstate Beverage Co.*, 821 F. Supp. 2d 1274, 1284 (M.D. Ala. 2011)). FLSA

13

plaintiffs may "consent" to "a broad release" of any and all FLSA claims only if the parties "provide evidence that each Plaintiff has a full understanding of what they are releasing in exchange for a settlement payment." *Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 1671489, at *3 (S.D. Cal. Apr. 28, 2014).

The Amended Release applies to "all claims of lost wages and benefits relating in any way to [a Plaintiff's] employment at VCS," including but not limited to "any and all other claims that were or could have been asserted in their collective action alleging failure to be compensated as required under the Fair Labor Standards Act." (Doc. 90-1 at 4, ¶ V.) The draft "Release of Claims for Wages and Benefits" submitted by the parties makes it clear that the Amended Release applies only to "wage, benefit and related claims . . . that arose on or before the date [a Plaintiff] signed [the Amended Release], whether known or unknown, but does not apply to future employment, if any." (Doc. 90-2 at 1.) The draft "Release of Claims for Wages and Benefits" also clarifies that the Amended Release applies only to claims for "any wages or benefits while employed at VCS, as asserted or could be asserted in the Lawsuit." (Doc. 90-2 at 1.) The Amended Release is limited temporally as it applies only to claims "arising on or before the date the Release is signed." (Doc. 90-1 at 4, ¶ V.) Accordingly, the Amended Release applies only to wage and hour claims "that were or could have been pled." *Wal-Mart Stores, Inc.*, 396 F.3d at 106.

Moreover, the draft "Release of Claims for Wages and Benefits" requires each opt-in Plaintiff to acknowledge that he or she read the Amended Release and Settlement Agreement, conferred with counsel, had an opportunity to object and did not, and understands the Amended Release and is signing it "**KNOWINGLY, VOLUNTARILY AND OF HER/HIS OWN FREE WILL**." (Doc. 90-2 at 1.) The draft "Release of Claims for Wages and Benefits" that the opt-in Plaintiffs are to sign therefore sufficiently apprises them of the scope of the Amended Release and sufficiently requires their acknowledgement that they understand "what they are releasing in exchange for a settlement payment." *Ambrosino*, 2014 WL 1671489, at *3; *see also Jordan v. Helix Sys., Inc.*, 2014 WL 4976099, at *3 (N.D. Ala. Oct. 3, 2014) (concluding "broad release

14

language that could hinder the goals of the FLSA" was nonetheless reasonable because of legal consultation regarding the other claims plaintiff "potentially might assert" and "the impact of the covenant not to sue," which rendered it apparent that plaintiff "knowingly and willingly signed the waiver provision").

In light of "the public policy favoring voluntary resolution of disputes," *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 881 (1994), and in light of the scope of the Amended Release and the acknowledgements contained in the draft "Release of Claims for Wages and Benefits," the Amended Release is fair and reasonable in the context of this litigation.

### D. Whether the Requested Attorney's Fees and Costs Are Reasonable.

"'Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must . . . assess the reasonableness of the fee award.'" *Ordonez*, 2014 WL 4075996, at *1 (quoting *Wolinsky*, 900 F. Supp. 2d at 336). "[A] court may use one of two methods to calculate attorney's fees: the lodestar method or the percentage of the fund method." *Thornhill*, 2014 WL 1100135, at *2 (internal quotation marks omitted). Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999)). After computing this rate, the district court may exercise its discretion to "increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.* (quoting *Savoie*, 166 F.3d at 460). Under the percentage method, the court simply "sets some percentage of the recovery as a fee." *Id.* (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988)).

"Either way, a court should be guided by the *Goldberger* factors when determining what are reasonable attorney's fees." *Thornhill*, 2014 WL 1100135, at *2 (analyzing *Goldberger* factors in a FLSA case). Indeed, the Second Circuit has consistently reiterated "that whether calculated pursuant to the lodestar or the percentage

method, the fees awarded in common fund cases may not exceed what is reasonable under the circumstances" and that "[w]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Goldberger*, 209 F.3d at 47-48 (internal quotation marks omitted) ("'[T]he district court, which is intimately familiar with the nuances of the case, is in a far better position to make [such] decisions than is an appellate court, which must work from a cold record.'") (alterations in original) (quoting *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992) (per curiam)). Accordingly, under either method,

> district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Id.* at 50 (internal quotation marks and alterations omitted).

In this case, the time and labor expended by Plaintiffs' counsel totaled 433 hours and approximately $63,918 in fees. Plaintiffs' counsel requests a fee award of approximately $11,205, which is approximately one-sixth of the total in fees incurred by counsel. While counsel therefore "committed substantial resources to prosecuting this case," counsel now seeks to recuperate only a portion of those resources. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622 (S.D.N.Y. 2012). Counsel also "risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation" through a settlement agreement or a favorable verdict. *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 178 (E.D.N.Y. 2012). Because total fees based on an hourly rate is "well in excess" of the percentage claimed, "the requested fees are plainly reasonable in relation to the time and effort that counsel expended in the course of this [FLSA] litigation." *Romero v. La Revise Assocs., L.L.C.*, 2014 WL 5840531, at *7 (S.D.N.Y. Nov. 12, 2014).

The requested fee totals approximately fifty percent of the settlement fund; however, the Settlement Agreement generally compensates most opt-in Plaintiffs for the

full amount of their statutory damages, including liquidated damages. The Settlement
Agreement's award distribution among the collective action and counsel therefore
remains "fair, reasonable and adequate because even after attorney's fees [and] costs,
[P]laintiffs would receive nearly all of their actual damages." *Lizondro-Garcia*, 300
F.R.D. at 180. For the same reason, the percentage awarded to counsel in this case of
fifty percent of the settlement fund does not "constitute a windfall" for counsel at the
expense of the opt-in Plaintiffs. *Beckman*, 293 F.R.D. at 481 (noting district courts must
"consider the size of a settlement to ensure that the percentage awarded does not
constitute a windfall").

  Throughout the course of the instant case, Plaintiffs' counsel has competently
represented the class. Although "this case is not as complex as a large scale national
class action" and did not involve the magnitude of plaintiffs common in FLSA cases,
Plaintiffs' claims involved arguably complex factual and legal questions that remain in
dispute, *Chavarria*, 875 F. Supp. 2d at 178, such that the opt-in Plaintiffs "ran a very real
risk of recovering nil." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 60
(E.D.N.Y. 2010) (noting further that the case at bar was "hardly a slam-dunk"); *cf. Davis
v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 186 (W.D.N.Y. 2011) (considering
whether case included "several thousand individuals" and "extraordinarily complex"
issues).

  Finally, FLSA collective actions often involve a minor recovery to vindicate
statutory rights; employees, however, would likely never recover wages arguably due in
the absence of legal representation. As the district courts in the Second Circuit have
consistently recognized, "[f]ee awards in wage and hour cases are meant to encourage
members of the bar to provide legal services to those whose wage claims might otherwise
be too small to justify the retention of able, legal counsel." *Beckman*, 293 F.R.D. at 477
(internal quotation marks omitted). Accordingly, Plaintiffs' counsel "must be adequately
compensated for their efforts," otherwise "wage and hour abuses would go without
remedy because attorneys would be unwilling to take on the risk." *Morris*, 859 F. Supp.
2d at 623; *accord Beckman*, 293 F.R.D. at 477 (explaining FLSA is a "remedial statute[],

the purpose[] of which [is] served by adequately compensating attorneys who protect wage and hour rights"). The court thus finds that public policy considerations weigh in favor of approval of Plaintiffs' attorneys' request for fees and costs as reasonable in this case. *See Morris*, 859 F. Supp. 2d at 624 (noting that district courts also "typically allow counsel to recover their reasonable out-of-pocket expenses").

For the foregoing reasons, the court finds the requested fees and costs to be "reasonable" under the *Goldberger* factors, *Goldberger*, 209 F.3d at 50, and GRANTS the request of Plaintiffs' counsel for attorney's fees and costs in the amounts of $11,205.52 and $4,733.50, less the amount necessary to compensate Carole Kulikowski, Donna Priolo, and Linda Stocker Reuther for their estimated unpaid wages and liquidated damages ($109.50). The court DENIES VCS's request that the amount for attorney's fees be reduced proportionally to account for the dismissal of one opt-in Plaintiff prior to the Fairness Hearing, (Doc. 82), because the parties had an opportunity to renegotiate that aspect of their Settlement Agreement as they did their Amended Releases and they did not do so. The court thus finds no basis to reduce the request for attorney's fees absent both parties' consent.

## CONCLUSION

For the foregoing reasons, the court GRANTS the stipulated motion to approve the Settlement Agreement as amended by the parties' joint stipulation to revise the release provision and as modified slightly within this Opinion and Order. (Doc. 75; Doc. 90.) The court GRANTS the request of Plaintiffs' counsel for attorney's fees and costs, with the minor modification necessary to compensate Carole Kulikowski, Donna Priolo, and Linda Stocker Reuther for the full amount of their estimated unpaid wages and liquidated damages. (Doc. 75.) The court ORDERS that Carole Kulikowski is to receive $120.84, that Donna Priolo is to receive $120.00, and that Linda Stocker Reuther is to receive $168.66. The court ORDERS that the difference of $109.50 between the amount slated to be paid pursuant to the Settlement Agreement and the amount conditionally ordered to be paid by the court should be subtracted from the amount authorized for attorney's fees. The court ORDERS that the total lump sum payment of $22,000 be reduced by $100,

18

which represents the damages allocated in the Settlement Agreement to Mary Lou Marcell-Cameron, who has been removed as a Plaintiff. The court DENIES VCS's request that the attorney's fees sought by Plaintiffs' counsel likewise be reduced on this basis. Finally, the court ORDERS that the parties have ten (10) days to file any objections to this Opinion and Order. In the absence of any objections, this Opinion and Order will become final on January 26, 2015.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _16th_ day of January, 2015.

Christina Reiss, Chief Judge
United States District Court